IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BENJAMIN GRINAGE II,              *
                                  *
        Plaintiff,                *
v.                                *
                                  *
CAROLYN W. COLVIN, Acting         *     No. 5:13CV00325-JJV
Commissioner, Social Security     *
Administration,                   *
                                  *
        Defendant.                *

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Benjamin Grinage, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.     BACKGROUND**

On December 2, 2009, Mr. Grinage protectively filed for DIB benefits due to left knee replacement, high blood pressure, PTSD, gout, and arthritis. (Tr. 235) Mr. Grinage's claims were denied initially and upon reconsideration. At Mr. Grinage's request, an Administrative Law Judge ("ALJ") held a hearing on May 15, 2012, where Mr. Grinage appeared with his lawyer. At the hearing, the ALJ heard testimony from Mr. Grinage, his wife, and a vocational expert ("VE"). (Tr. 70-114)

The ALJ issued a decision on June 19, 2012, finding that Mr. Grinage was not disabled under the Act. (Tr. 23-39) The Appeals Council denied Mr. Grinage's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Grinage, who was forty-four years old at the time of the hearing, has a high school

education and past relevant work experience as a patrolman and traffic sergeant. (Tr. 110)

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Grinage had not engaged in substantial gainful activity since July 27, 2009, and he had the following severe impairments: osteoarthritis, hypertension, mood disorder, anxiety disorder (PTSD), and substance disorder in remission. (Tr. 25) However, the ALJ found that Mr. Grinage did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (*Id.*)

According to the ALJ, Mr. Grinage has the residual functional capacity ("RFC") to do less than the full range of light work. He can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders or perform work requiring more than one month of training. He must avoid hazards and unprotected heights and would need to sit/stand at will. He is limited to simple instructions, simple work related decisions, work where the complexity of the tasks is performed by rote, with few variables and little judgment, and few, if any, work place changes. Supervision must be simple, direct, and concrete. (Tr. 28) The VE testified that the jobs available with these limitations were small products assembler and electrical assembler. (Tr. 111) Accordingly, the ALJ determined that Mr. Grinage could perform a significant number of other jobs existing in the national economy, and found that he was not disabled.

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

**III.   ANALYSIS**

    **A.   Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

    **B.   Mr. Grinage's Arguments for Reversal**

Mr. Grinage asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, Mr. Grinage contends that the ALJ (1) erred in his credibility finding; (2) erred in his RFC finding; and (3) failed to meet his burden at step 5 (Doc. No. 14).

        1.   Credibility

Mr. Grinage contends the ALJ's credibility finding is not supported by substantial evidence in the record.

When assessing the credibility of the severity of Mr. Grinage's impairments, the ALJ properly considered Mr. Grinage activities of daily living.[6] The ALJ noted that Mr. Grinage can

---

[3] *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4] *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5] *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

[6] *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996) (An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities,

clean, shop, cook, drive, pay bills, do the dishes, and take care of his personal needs. He also noted that Mr. Grinage regularly goes fishing, visits with relatives in Little Rock, and goes to church. (Tr. 27, 29)

The ALJ pointed out that, though Mr. Grinage claims that working "aggravates his condition," no treating doctors "have placed the level of limitation on him that he has alleged." (Doc. No. 29)  Mr. Grinage argued that Dr. Martin listed him as "retired/disabled" on a November 2011 note, but there is some indication that this notation was based on Mr. Grinage's opinion, since the notes from May 18, 2011, read "disabled per patient." (Tr. 683, 805) Additionally, before the May 2011 note, the last mention of work restrictions was from July 2010 where Dr. Martin found that Mr. Grinage could do "no jumping, no squatting, no running, no kneeling, and no heavy lifting." (Tr. 644)  Two months before that, Dr. Grinage released Mr. Grinage to perform "administrative type duties." (Tr. 646)  I recognize that Mr. Grinage had a second knee surgery in July 2011, but there is no explanation for the significant status change.

Mr. Grinage also refers to a May 23, 2012, letter where Dr. Martin indicated that the "infection has resolved, but Mr. Grinage has been left with significant functional impairment with the inability to seek gainful employment." (Tr. 789)  Dr. Martin did not elaborate further. Notably, this letter was obtained a few weeks after Mr. Grinage's hearing in front of the ALJ. Furthermore, it is contrary to the record as a whole.  From August 2011 through January 2012, Mr. Grinage repeatedly reported that his knee was improving, though there was occasional swelling. (Tr. 693-710)  Mr. Grinage informed his physical therapist on September 2, 2011, that he was sore after he "did a lot over the weekend." (Tr. 684)  In January 2012, he was able to travel to Las Vegas for vacation. (Tr. 772)  By February 3, 2012, the notes reflect that his knee is "doing great" and "doing

---

and may discredit complaints if they are "inconsistent with the evidence as a whole.").

4

fine." (Tr. 711)  Finally, when Dr. Martin wrote the May 2012 note, he had not seen Mr. Grinage since November 2011, and at that time Mr. Grinage reported only "mild pain."  (Tr. 683) Accordingly, the ALJ appropriately discounted Dr. Martin's conclusion.[7]

    2.    RFC Finding

Mr. Grinage contends the ALJ's RFC finding is contrary to Dr. Martin's May 2012 statement that Mr. Grinage is no longer able to work.  For the same reasons as set out above, the ALJ did not err in disregarding Dr. Martin's May 2012 letter.  Additionally, the RFC finding is consistent with the objective medical records as a whole.

As for the alleged mental impairments, the ALJ properly considered them and included restrictions in the RFC.  Mr. Grinage argues the ALJ erred by relying on Dr. McDonald's GAF score of 55 rather than the other GAF scores in the record; but Mr. Grinage did not cite any earlier GAF scores.  Either way, an ALJ is permitted to disregard GAF scores when they conflict with the medical evidence and the claimant's functional abilities.[8]  Additionally, in November 2007, Mr. Grinage was diagnosed with PTSD related to an accident that occurred in 1988, but he continued to work as a police officer until he hurt his knee in July 2009.  (Tr. 345-348)  An ALJ may find that a mental impairment is not disabling when a claimant continues to work.[9]

---

[7]*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (holding that an ALJ may discount or even disregard the opinions of a treating physician, when they are inconsistent or where other medical assessments are better supported).

[8]*Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010).

[9]*Krone v. Apfel*, 187 F.3d 642 (8th Cir. 1999) (finding that "despite some evidence of a possible mental impairment," the fact that claimant continued to work indicated that any impairment was not disabling).

5

      3.    Step 5

Mr. Grinage argues the ALJ's hypothetical did not consider the side-effects of his medications, did not mention walking limitations, did not consider the mental and physical impairments set out by Dr. Martin and the GAF scores, and did not consider limitations on concentration, persistence, and pace. (Doc. No. 14)

Contrary to Mr. Grinage's argument, the ALJ considered the side-effects of his medications when the ALJ found that he "must avoid hazards and unprotected heights." (Tr. 28) Additionally, Mr. Grinage testified that he worked for years as a police officer while taking the same medications. (Tr. 88) As for the walking limitations, the ALJ addressed this when he indicated that Mr. Grinage should be able to sit/stand "at will." As mentioned above, the arguments based on Dr. Martin's letter and GAF scores are without merit. And finally, the limitations on concentration, persistence, and pace were considered when the ALJ limited the RFC to simple instructions, simple work related decisions, work where the complexity of the tasks is performed by rote, with few variables and little judgment, few, if any, work place changes, and simple, direct, and concrete supervision. (Tr. 28)

## IV.    CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Mr. Grinage's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 16th day of September, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE